[No. 41884.   En Banc.   August 12, 1971.]

*In the Matter of the Application for a Writ of Habeas Corpus of* FRANK MIESBAUER, *Respondent,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Petitioner.*

*Slade Gorton, Attorney General,* and *William L. Britton, Assistant,* for petitioner.

*Albert J. Golden* (of *Golden & Archer*), for respondent (appointed counsel for appeal).

ROSELLINI, J.—The warden of the state penitentiary at Walla Walla has petitioned this court for a writ of certiorari to review an order of the Superior Court for Walla Walla County granting the respondent's petition for a writ of habeas corpus. The respondent is presently serving a sentence imposed upon him by the Superior Court for Clark County in April 1963.

The order of the Superior Court for Walla Walla County directed the release or retrial of the respondent unless the

proceedings therein should be reviewed by issuance of a writ of certiorari out of a higher court.

The release of the respondent was ordered upon the sole ground that his plea of guilty to a charge of grand larceny in Clark County in November 1962 had not been intelligently entered. The Superior Court for Clark County, upon an order of reference from the Superior Court for Walla Walla County, had found that the plea was "voluntarily and understandingly made"; but that the court had failed to advise the respondent that, by entering a plea of guilty, he waived his constitutional rights incident to trial and also failed to advise him of the maximum penalty which the court could impose upon him.

There was a finding that the respondent was advised of his right to counsel and waived that right. The superior court stated that it was satisfied that, had the trial court advised the respondent of the maximum penalty involved and of the rights which were waived, the plea of guilty nevertheless would have been entered.

Upon the findings of the Clark County court, the Superior Court for Walla Walla County concluded that the respondent had been denied a constitutional right to be advised fully as to the rights which are waived by a plea of guilty and of the consequences of the plea, and that this denial rendered the judgment and sentence void.

At the time the judgment was entered against the respondent, the petitioner contends, a trial judge had no affirmative duty to advise the defendant who offered to plead guilty, concerning the rights which were waived by such a plea and the consequences of the plea. Such a duty, he contends, only came into existence when this court rendered its decision in *Woods v. Rhay*, 68 Wn.2d 601, 414 P.2d 601 (1966), if that decision is to be interpreted as laying down a mandatory requirement rather than a prophylactic admonition. He concedes that the United States Supreme Court has now ruled in a capital case that the trial court must ascertain that the defendant understands the rights which he relinquishes and the possible consequences of his

plea, and that the record must affirmatively show that this was done. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969).

This court has subscribed to the majority rule that in order to be valid a plea of guilty must be made voluntarily and with knowledge of its consequences. *Woods v. Rhay, supra.* We have never held, however, that a defendant has a constitutional right to be formally advised of the consequences of his plea by the trial judge. Rather, we have followed the general rule that whether the defendant knew the consequences of his plea is a fact to be determined from all the circumstances. *State v. Taft,* 49 Wn.2d 98, 297 P.2d 1116 (1956). In *Woods v. Rhay, supra,* we merely recommended that such a procedure be followed in order to forestall later attacks on the judgment founded on the contention that a plea of guilty was not made with knowledge of the consequences.

The record in this case shows that the respondent was apprehended near Newberg, Oregon, driving an automobile which he had taken from its owner in Vancouver, Washington, with permission of the owner, for the purpose of "trying it out" to see if he desired to purchase it. The automobile was taken by him on Saturday. When, on the following Monday, he had not returned it, the owner notified the police and this notification resulted in his arrest in Oregon. He waived extradition and was returned to Clark County.

When he appeared for arraignment on a charge of withholding property having a value of over $75, which he held as bailee (grand larceny under RCW 9.54.010(3) and RCW 9.54.090(5)), the court advised him that if he could not afford counsel, the court would appoint counsel to defend him. He stated that he did not desire counsel, that he thought he was guilty and wished to plead guilty. After his plea was accepted, the trial court inquired into the circumstances of the case. The respondent stated that he had been drinking while he had the automobile in his possession and had driven into a ditch and damaged it, that he became

alarmed about the damage and about the fact that he was drinking, and that he picked up a friend or acquaintance and "took off." The prosecution said that it had evidence that the respondent and the other occupant of the automobile were planning to go to California. The respondent denied this but admitted that he gave the acquaintance the impression that he owned the vehicle.

The respondent was 23 years old at the time. He had quit school when he completed the elementary grades but later received a high school diploma after taking a correspondence course. He had enlisted in the army and had served 3 years and was only recently discharged when the incident giving rise to the prosecution occurred. He had no prior criminal record.

The charge was read to the respondent in open court and he was given a copy of it. In it he was told that he was accused of a felony.

After hearing the prosecution's contentions and the respondent's version of the event, the trial court announced that it would defer sentence for 2 years, during which time the respondent would be on probation, and that if he behaved as a law-abiding citizen during that period and did not steal any more cars, the court would allow him to change his plea and would clear his record. Further conditions of the deferred sentence were that the respondent would pay for the damage to the automobile and would serve 3 months in jail.

Unfortunately the respondent violated the terms of his probation. The nature of the violation does not appear in the record but the record shows that when he appeared for revocation of the deferment of sentence, he was represented by counsel. He did not ask the court's permission to withdraw his plea of guilty at that time, although he was made aware of the full consequences of that plea before sentence was entered, nor did he move to vacate the judgment thereafter or appeal from the judgment entered by the court.

In 1969, 6 years later, the respondent began a habeas

corpus proceeding contending that certain constitutional rights were denied him. The sole contention which survives at this point in the proceeding and the contention upon which he, with the aid of court-appointed counsel, prevailed in the Superior Court for Walla Walla County, is that his trial was rendered void by the court's failure to advise him, before accepting his plea of guilty, that he thereby forfeited the rights incident to trial and to further advise him of the maximum sentence which the court could impose upon him.

It is, of course, the statutory right of a person incarcerated in a state penal institution to raise, by petition for writ of habeas corpus, a contention that his constitutional rights have been violated. RCW 7.36.130. *Thorne v. Callahan,* 39 Wn.2d 43, 234 P.2d 517 (1951). However, one who seeks this extraordinary writ for the purpose of setting aside a judgment not void upon its face has the burden of showing not only that a right was denied him but that he was prejudiced thereby. *Stiltner v. Rhay,* 258 F. Supp. 487 (S.D. Wash. 1965), *aff'd,* 367 F.2d 148 (9th Cir. 1966), *cert. denied,* 385 U.S. 941, 17 L. Ed. 2d 220, 87 S. Ct. 310 (1966). As our decisions have shown, in order to persuade the court to set aside a conviction, one who attacks a judgment by habeas corpus must show that the failure to accord him a constitutional right resulted in the denial of due process of law. *See Thorne v. Callahan, supra; Gensburg v. Smith,* 35 Wn.2d 849, 215 P.2d 880 (1950); and *Wilken v. Squier,* 50 Wn.2d 58, 309 P.2d 746 (1957).

What we have said of the holding in *Woods v. Rhay, supra,* disposes of the respondent's contention that that case stands for the proposition that a plea of guilty cannot be intelligently made unless the trial judge advises the defendant, prior to acceptance of the plea, concerning the rights incident to trial which he thereby relinquishes and of the maximum sentence which may be imposed as a consequence. That opinion does not alter the prior rule that a plea must be voluntary and must be an intelligent waiver

of rights. Whether these requirements have been met in a given case is still a question of fact.

*Boykin v. Alabama, supra,* is the only other case which the respondent cites which might tend to support the ruling of the superior court setting aside his conviction on the single ground that the trial court did not advise him of the consequences of his plea prior to accepting it. That case was decided in 1968, and it is conceded that to apply it to the respondent's trial would be to give it retroactive effect.

We need not consider whether *Boykin v. Alabama, supra,* was intended to have such effect, for we find it distinguishable on several grounds. First, the case was before the Supreme Court on certiorari from a judgment of the state supreme court. On an appeal directly attacking the judgment, a divided court had affirmed the defendant's conviction. Thus the case did not involve a collateral attack by habeas corpus. Second, the maximum sentence in that case was the death sentence, and it was imposed even though the defendant's alleged crimes had not involved the loss of any human life. The alleged crimes consisted of a series of armed robberies. The defendant was a black man and, although he had court-appointed counsel, it is implicit in the opinion of the United States Supreme Court that that court believed his counsel could not be relied upon to advise him of the consequences of his plea and to make certain that he understood them.

While the court did not discuss the question of whether the defendant's right to a fair trial was prejudiced by the court's failure to advise him of the consequences of his plea, it can be inferred that such prejudice was found since the maximum sentence was imposed upon the defendant and that sentence was death.

We are not here concerned with a capital offense nor is the question raised in a direct attack on the judgment. Here, the defendant was given the lightest penalty which the court could impose—a deferred sentence. He was given a chance to have his record cleared of the charge.

Furthermore, if he was not aware of the consequences of

his plea when he first tendered it (and the Superior Court for Clark County which conducted the hearing on reference was of the opinion that he was indeed aware of them), he was aware of them when his probation was revoked. At that hearing he was represented by counsel. He could have requested that he be given permission to withdraw his plea and we assume that he would have done so had ignorance or misunderstanding of the consequences been a factor in his original decision to plead guilty. Under RCW 10.40.175, the plea of guilty may be withdrawn at any time before judgment is entered, and as the United States Supreme Court observed in *Mempa v. Rhay,* 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967), the presence of counsel at a hearing on revocation of probation is important if the right to request permission to withdraw the plea is to be effectively enjoyed.

The respondent had other opportunities to challenge the fairness of his trial upon the ground now urged by him. He could have moved to set aside the judgment for irregularity. *State v. Taft,* 49 Wn.2d 98, 297 P.2d 1116 (1956). Or he could have appealed directly from the judgment.

The respondent's failure to avail himself of any of these remedies indicates quite clearly, we think, that he did not feel at the time his deferred sentence was revoked that he had been denied due process of law. In *Woods v. Rhay,* 68 Wn.2d 601, 606, 414 P.2d 601 (1966), in considering the same contention that a plea of guilty made by a defendant who was granted probation was not intelligently waived, we said:

> The record does not reveal nor does petitioner contend that he at any time sought to change his plea of guilty during his probationary period. Instead, it appears that he willingly accepted the liberties conveyed by the order of deferred sentence but was unable to refrain from further law violations. His remorse now comes too late.

Like the trial court which heard the evidence on the order of reference, we are convinced that the respondent's plea of guilty was in no way influenced by his alleged

ignorance of the possible maximum penalty or of the rights incident to trial. It is evident that he felt a trial offered no hope of acquittal. It is apparent that, after he had the services of counsel and after he admittedly knew the extent of the maximum sentence, he was not sufficiently convinced that he had made a mistake in pleading guilty to offer to change his plea or to attack the judgment directly.

The record affirmatively shows that the respondent was not prejudiced by the trial court's failure to ascertain that the respondent knew the full consequences of his plea when the plea was accepted, if there was such failure, and that any right which he may have had to question the validity of the judgment upon this ground has been waived.

The judgment of the trial court is reversed and the writ of habeas corpus will be quashed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.

Petition for rehearing denied October 28, 1971.