[No. 6942-0-I.   Division One.   September 22, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES LEROY DAVIS, *Appellant.*

*John G. Ziegler* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marc Boman, Deputy,* for respondent.

CALLOW, C.J.—James LeRoy Davis was charged with the crime of attempted robbery in the first degree, RCW 9A.56.200(1)(b) and RCW 9A.56.190, while armed with a deadly weapon, RCW 9.95.040, *i.e.*, a firearm, RCW 9.41-.025. A jury found the defendant guilty as charged and returned special verdicts that he was armed with a deadly weapon, a firearm. The trial court entered judgment and sentence on the defendant's conviction of attempted robbery in the first degree, but struck the deadly weapon and firearm allegations. The trial court subsequently sentenced the defendant to life imprisonment pursuant to the habitual criminal statute, RCW 9.92.090. The defendant appeals.

At 12:05 a.m. on March 25, 1978, the lounge of the Bagdad Restaurant in Seattle was robbed. At the defendant's subsequent trial for this robbery, the bartender on duty on the night of the robbery testified that about an hour or two before the robbery the defendant and another man entered the bar, had a drink, stayed approximately 1 1/2 hours, and then left. The bartender stated that shortly after midnight the defendant and a man named Ronnie entered the lounge, sat down at the bar and ordered drinks. When the bartender brought Ronnie his change, he put it in his pocket, pulled a gun from underneath his jacket and pointed it at the bartender, telling him that this was a robbery and to keep cool. He then put the gun back inside his jacket. The bartender was not sure whether Ronnie told the defendant to get the money. The defendant walked around a post at the end of the bar while holding a white bag in his hand. The defendant and the bartender then walked to the till where the defendant opened two drawers and said he wanted the bag containing the restaurant money. The bartender further testified that the contents of the bar till were emptied into the defendant's bag,

but the restaurant money was not, and that as the defendant walked away he, the bartender, grabbed him behind a post and put a gun to his head. The bartender stated that then Ronnie fled and two customers' held the defendant until the police arrived.

The defendant, who raised the defense of duress, testified as follows: He and a friend entered the bar at about 9:30. They had a couple of drinks and the defendant called his girlfriend from a pay telephone. They then left, went to another bar, visited with some friends, and were returning up Broadway Avenue to have something to eat when they were stopped by a stoplight. Because he had to make another telephone call, he asked his friend to wait. He then went into the lounge to use the telephone again. The number he called was busy so he went out the side door, at which time he ran into an old acquaintance named Ronnie who greeted him and told him that he would buy him a drink. The defendant agreed. They went into the bar and ordered drinks for which Ronnie paid. The defendant immediately began to drink since his friend was waiting for him, but all of a sudden Ronnie pulled a gun and rested it on the bar. The bartender then stepped back, Ronnie dropped the gun below the bar, turned and pointed it at the defendant saying, "Better yet you go with him. Go ahead." Well aware of Ronnie's violent reputation and temper, the defendant did so. The defendant had no bag with him, but found a bag in a drawer when he got to the cash register. He did not ask about the restaurant money, but told the bartender only that Ronnie wanted all the money.

Prior to submission of the case to the jury, defense counsel objected to the giving of two instructions defining robbery in the first degree. The trial court agreed not to give one of the instructions, but did not instruct the jury concerning the definition of robbery in the first degree. Defense counsel did not object to this oversight.

Following the return of the jury's verdict finding the defendant guilty as charged, the State filed a habitual

criminal supplemental information. The defendant moved to dismiss count 2 of that information, an allegation of the defendant's conviction of robbery in 1971. The defendant's affidavit in support of his motion alleges that (a) he was convicted of robbery on a plea of guilty on March 18, 1971, and given a maximum 5–year prison sentence that was suspended; (b) he did not know that a robbery conviction required a maximum term of at least 20 years; (c) his probation was subsequently revoked on December 5, 1974, and he was sent to prison on the 5–year maximum sentence; (d) the State subsequently moved to correct the sentence to 20 years; (e) the court, finding the prior 5–year maximum sentence to be in error, allowed the change of sentence requested by the State; and (f) at no time during any of these proceedings did any of his lawyers tell him that he could withdraw his guilty plea because it was entered without knowledge of the maximum term of imprisonment. The trial court granted a hearing on the defendant's motion.

The defendant testified at the hearing that the assertions in his affidavit were correct. He further testified that none of his lawyers in the prior proceedings had ever told him that he might possibly withdraw his guilty plea. The defendant introduced into evidence the transcript of the 1971 hearing wherein he pleaded guilty to the robbery charge. Nowhere therein is there any explanation of the possible sentencing consequences, any inquiry of the defendant as to the factual basis for his plea, or any explanation of the elements of the offense. The attorney who represented the defendant in 1971 testified that he did not recall advising the defendant of the maximum term and that it was unlikely that he had done so. The attorney testified that it was his practice to inform defendants that entry of a guilty plea waived the rights to a jury, to confront and cross–examine witnesses, to call witnesses, and to appeal. The attorney who represented the defendant at the modification of sentence proceeding testified that it was her position at that time to oppose the modification. She fur-

ther testified that it never occurred to her to move to withdraw the defendant's guilty plea, and that he had never indicated any knowledge of his right to do so.

Relying upon *Miesbauer v. Rhay*, 79 Wn.2d 505, 487 P.2d 1046 (1971), the State contended at the hearing that the defendant had waived any objection to the constitutional validity of his guilty plea by failing to withdraw his plea when entered, when he was initially sent to prison, or when he learned that the correct sentence was 20 years. The trial court adopted the State's reasoning and sentenced the defendant as a habitual criminal.

The following issues are raised:

1. Did the trial court's failure to instruct the jury on the elements of the offense of robbery in the first degree deprive the defendant of his right to due process of law?

2. Did the trial court erroneously hold, for purposes of sentencing the defendant as a habitual criminal, that he had waived his objections to the validity of his 1971 guilty plea to the crime of robbery?

The first issue raised is whether failure to instruct the jury on the elements of the offense of robbery in the first degree deprived the defendant of his right to due process. The defendant contends for the first time on appeal that the failure to instruct the jury on the elements of robbery and first degree robbery deprived him of due process of law because the due process clause of the United States Constitution, U.S. Const. amend. 14, § 1, protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. The defendant maintains that this assignment of error is properly raised for the first time on appeal because the error alleged is of constitutional magnitude.

In the course of the trial court's "to convict" instruction on the crime of attempt to commit robbery in the first degree, it is stated that two of the elements to be proven beyond a reasonable doubt are that "the defendant did an

act which was a substantial step toward the commission of robbery in the first degree," and "[t]hat the act was done with the intent to commit robbery in the first degree."[1] The trial court's instruction on accomplice liability speaks of "the commission of the crime."[2] Nowhere in the court's instructions is there a definition of first degree robbery[3] or robbery.[4]

---

[1]Instruction No. 3 provides:

"To convict the defendant of the crime of attempt to commit robbery in the first degree each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 24th day of March, 1978, the defendant did an act which was a substantial step toward the commission of robbery in the first degree.

"(2) That the act was done with the intent to commit robbery in the first degree.

"(3) That the acts occurred in King County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

[2]Instruction No. 6 provides:

"A person is legally accountable for the conduct of another when he is an accomplice of such other person in the commission of the crime.

"A person is an accomplice of another person in the commission of a crime if with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, requests, aids or agrees to aid such other person in planning or committing the crime.

"The words 'aids or agrees' comprehend all assistance rendered by words, acts, encouragement, support or presence to render assistance should it become necessary."

[3]RCW 9A.56.200 provides in part:

"(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) Is armed with a deadly weapon; or

"(b) Displays what appears to be a firearm or other deadly weapon; or

"(c) Inflicts bodily injury."

[4]RCW 9A.56.190 defines robbery as follows:

"A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or

■■ In the absence of either a violation of a defendant's constitutional right or a request to instruct, there can be no error assigned on appeal to a trial court's failure to give an instruction. *State v. Scott*, 93 Wn.2d 7, 14, 604 P.2d 943 (1980). In *State v. Pawling*, 23 Wn. App. 226, 597 P.2d 1367 (1979), the defendant was found guilty by a jury of first degree burglary based on an assault of a person in a dwelling. No instruction defining assault was given or requested at trial. The defendant contended on appeal that the trial court's omission could be raised on appeal due to the requirement that the State must prove every element of the offense charged beyond a reasonable doubt, citing *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). *Pawling* rejected the defendant's argument, stating that a jury need only be instructed as to each element and it had been so instructed; that there was no necessity to define an assault since it had taken place without doubt; and that "The word 'assault' is not exclusively of legal cognizance, and an understanding of its meaning can fairly be imputed to laymen." *State v. Pawling, supra* at 233. Insofar as the raising of constitutional issues for the first time on appeal is concerned, we read *Pawling* as being limited to those instances where the element not instructed upon is one of common understanding.

Here, unlike in *State v. Pawling, supra,* it cannot be said that the average juror knows, as a matter of common knowledge, the definition of first degree robbery or robbery. The defendant, under the circumstances, may raise the issue of the failure to instruct, for the first time on appeal, since the due process clause protects an accused from conviction except upon proof beyond a reasonable doubt of "every fact necessary to constitute the crime with which he is charged." *In re Winship, supra* at 364. *Accord, State v.*

---

retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear."

*McHenry,* 88 Wn.2d 211, 214, 558 P.2d 188 (1977); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977).

It cannot be said that a defendant had a fair trial if the jury must guess at the meaning of an essential element of the crime with which the defendant is charged, or if the jury might assume that an essential element need not be proven. Where the crime charged is the attempt to commit an offense, but the offense allegedly attempted is not defined for the jury, the jury might assume that the State need only prove an attempt as defined by the court and not what was attempted. The State has thus been relieved of its burden of proving every element of the crime charged beyond a reasonable doubt. This is an error of nondirection that may be raised for the first time on appeal, *see State v. McHenry, supra.*

The next question, then, is whether the error may be considered constitutionally harmless. The trial court instructed the jury on the defendant's defense of duress as follows:

> Duress is a defense to a criminal charge if the defendant participated in the crime under compulsion or threat or use of force which created an apprehension in the mind of the defendant that in case of refusal the defendant or another person would be liable to immediate death or immediate grievous bodily harm; and if such apprehension by the defendant was reasonable and if the defendant would not have participated in the crime except for the duress involved.
>
> The defense of duress is not available if the defendant intentionally or recklessly placed himself in a situation in which it was probable that he would be subject to duress.

Instruction No. 10. This instruction was taken almost word for word from RCW 9A.16.060. The trial court refused the defendant's request that the jury be additionally instructed as follows:

> If, after considering all of the evidence in this case, the defense of duress raises in your mind a reasonable doubt as to the defendant's guilt, then you must return a verdict of not guilty.

■ Constitutional error is harmless only where the reviewing court can "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Vargas,* 25 Wn. App. 809, 610 P.2d 1 (1980). We cannot declare "harmless beyond a reasonable doubt" the court's failure to instruct on the definition of robbery and first degree robbery.

The defendant testified several times that he aided Ronnie during the course of an attempted robbery or robbery because he was forced to. As stated by defense counsel in closing argument to the jury,

> I think the only issue before you is whether James was duressed into participating *in this robbery* by walking behind the bar and attempting to take some money to give to the man who was holding the gun. Duress is a complete defense to this case. If you have even a reasonable doubt based on James' testimony *that he was forced to commit this crime,* then you must acquit him of the charge entirely.

(Italics ours.) This was a technically correct statement of the case based on the trial court's instructions to the jury. The instructions assumed the existence of a robbery and placed the burden on the State to prove only those elements instructed upon.

■ The defendant might have been acquitted if the trial court had instructed the jury on the definition of robbery. One element of robbery is that the defendant "unlawfully" take personal property. RCW 9A.56.190. "Unlawfully" has not been defined in the context of RCW 9A.56.190, but has been defined in other contexts as comprehending without legal justification or excuse. *State v. Vanderveer,* 115 Wash. 184, 186, 196 P. 650 (1921); *see Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 505–06, 125 P.2d 681 (1942). In the absence of any showing of a contrary legislative intent or other contrary authority, we find that "unlawfully" has the same meaning in RCW 9A.56.190 since the statute must be construed strictly against the

State and in favor of the accused. *See Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958); RCW 9A.04.020(1)(b). An act done under duress is legally justified or excused. *See generally State v. Bromley,* 72 Wn.2d 150, 432 P.2d 568 (1967); Annot., 40 A.L.R.2d 908 (1955); W. LaFave & A. Scott, *Criminal Law* 374 (1972); Comment, *The Constitutionality of Criminal Affirmative Defenses: Duress and Coercion,* 11 U.S.F. L. Rev. 123 (1976). To convict the defendant of attempted first degree robbery, it was incumbent upon the State to prove that what was attempted was a robbery, including its "unlawfully" element.[5] RCW 9A.04.020(1)(b); RCW 9A.04.100; RCW 9A.56.190; *State v. Hanton,* 94 Wn.2d 129, 614 P.2d 1280 (1980). If the jury had been instructed on the definition of robbery, the defendant would have been able to argue that the State must prove the "unlawfully" element beyond a reasonable doubt. This could have had a bearing on the jury's deliberations. In view of this possibility of prejudice to the defendant, when considered in view of the holding of *State v. McHenry, supra,* that failure to instruct as to the State's burden to prove every element beyond a reasonable doubt is reversible error even when an objection was not raised below and the defendant will inevitably be convicted, we conclude that the judgment must be reversed.

The next issue raised is whether the trial court erroneously held for purposes of sentencing the defendant as a habitual criminal that he had waived his objections to the validity of his 1971 guilty plea to the crime of robbery. We

---

[5]As explained in W. LaFave & A. Scott, *supra* at 429:

"As is true generally of anticipatory offenses, a clear understanding of the requisite mental state in a particular case necessitates an analysis of the elements of the crime to which the anticipatory offense relates. The crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses; a defendant must be charged with an attempt to commit a specifically designated crime, and it is to that crime one must look in identifying the kind of intent required. For example, if the charge is attempted theft and theft is defined as requiring an intent to permanently deprive the owner of his property, then that same intent must be established to prove the attempt. It is not enough to show that the defendant intended to do some unspecified criminal act." (Footnotes omitted.)

reach this issue because of the possibility that it will arise again. The defendant argues that the trial court erroneously sentenced him as a habitual criminal because his 1971 guilty plea to the 1971 robbery was entered without compliance with the requirement of *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), that the defendant be advised of the sentencing consequences in order for his guilty plea to be considered voluntary. The defendant argues that the trial court's reliance on *Miesbauer v. Rhay,* 79 Wn.2d 505, 487 P.2d 1046 (1971), for a conclusion of waiver is misplaced because *Miesbauer* was overruled *sub silentio* in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

The trial court at no time made a finding as to the compliance of the defendant's guilty plea with the constitutional requirements of *Boykin v. Alabama, supra. Boykin* holds in part that a defendant pleading guilty must be apprised of or aware of the nature of the offense charged and the consequences of pleading guilty in order for the plea to be accepted as knowing, intelligent and voluntary. The consequences that the defendant must be apprised of include any mandatory minimum or possible maximum sentence for the offense. *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

A defendant in a habitual criminal proceeding can challenge the validity of his guilty plea on the ground that he was not apprised of or aware of the nature or consequences of pleading guilty to the offense. *State v. Holsworth, supra.* Once the defendant raises this issue, the State must prove that a knowing guilty plea was entered after disclosure of the nature and consequences of the offense since three valid felony convictions is an essential element of the habitual criminal status that the State must prove beyond a reasonable doubt under RCW 9.92.090. *State v. Holsworth, supra* at 159. The court may, as did the court here, consider extrinsic evidence where the challenge involves a guilty plea entered prior to the September 1976 date of decision of *Wood v. Morris, supra.*

In *Miesbauer v. Rhay, supra,* the defendant claimed that he was not advised of the maximum penalty at the time of his 1962 guilty plea to a charge of grand larceny. The defendant received probation on that charge, and when his probation was revoked he became aware of the maximum term because he was sentenced to prison. He did not at that time move to vacate the judgment or appeal from the judgment. Six years later he filed a writ of certiorari alleging that the failure to advise him of the maximum term invalidated his guilty plea under the holding of *Boykin v. Alabama, supra. Miesbauer* did not reach the issue whether *Boykin* applied retroactively, but instead held that *Boykin* was distinguishable as involving a capital crime, a direct appeal and a showing of prejudice. *Miesbauer v. Rhay, supra* at 510. Noting that the defendant had not sought to withdraw his guilty plea when his probation was revoked, *Miesbauer* states that "we assume that he would have done so had ignorance or misunderstanding of the consequences been a factor in his original decision to plead guilty." *Miesbauer v. Rhay, supra* at 511. The opinion further states that the defendant's failure to earlier avail himself of any of the possible remedies "indicates quite clearly, we think, that he did not feel at the time his deferred sentence was revoked that he had been denied due process of law." *Miesbauer v. Rhay, supra* at 511. *Miesbauer* concludes:

> Like the trial court which heard the evidence on the order of reference, we are convinced that the respondent's plea of guilty was in no way influenced by his alleged ignorance of the possible maximum penalty or of the rights incident to trial. It is evident that he felt a trial offered no hope of acquittal. It is apparent that, after he had the services of counsel and after he admittedly knew the extent of the maximum sentence, he was not sufficiently convinced that he had made a mistake in pleading guilty to offer to change his plea or to attack the judgment directly.
> The record affirmatively shows that the respondent was not prejudiced by the trial court's failure to ascertain that the respondent knew the full consequences of his

plea when the plea was accepted, if there was such failure, and that any right which he may have had to question the validity of the judgment upon this ground has been waived.

*Miesbauer v. Rhay, supra* at 511–12.

To the extent that *Miesbauer* attempted to distinguish *Boykin v. Alabama, supra,* it was superseded by *Wood v. Morris, supra* at 505. Although *Wood* did not address the issue of retroactive waiver presented in *Miesbauer, Miesbauer's* discussion of waiver in the context of a collateral attack is inconsistent with the position taken in the context of a challenge to the present use of a prior conviction that a waiver requires an intentional relinquishment or abandonment of a known right or privilege, and that the State must prove beyond a reasonable doubt that the defendant entered a knowing guilty plea, *see generally State v. Holsworth, supra. Miesbauer's* assumption that the defendant suffered no prejudice because he did not avail himself of the possible remedies earlier, and that he thereby waived his right to claim error, is met in the context of a habitual criminal proceeding by the following statement in *Holsworth*:

In addition, the State's contention that the defendant must be required to show affirmatively that he suffered actual prejudice through nondisclosure, *i.e.,* that had he been aware of the nature and consequences of the offense he would not have pleaded guilty, is likewise unfounded. The challenge is not a collateral retroactive attack to set aside the prior conviction, but a challenge to the present use of a prior conviction; "prejudice" is therefore inherent in the fact that allowing use of the conviction will enhance the possible sentence for the present conviction to life imprisonment.

*State v. Holsworth, supra* at 160.

It must be presumed that the defendant has suffered prejudice. The evidence is uncontroverted that he never was made aware that he could withdraw his guilty plea. There was thus no basis for the trial court to rely upon *Miesbauer* for a conclusion that the defendant waived his

right to challenge the 1971 guilty plea for purposes of the habitual criminal proceeding.

The judgment is reversed and the cause remanded to the trial court.

DORE and RINGOLD, JJ., concur.