314

[No. 25660-0-III.   Division Three.   December 27, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC EDWARD O'DONNELL, *Appellant*.

316

317

*Jordan B. McCabe*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

¶1 KULIK, J. — Eric Edward O'Donnell appeals his conviction for first degree robbery. Mr. O'Donnell contends the trial court erred by omitting the words "in the presence of" in the "to convict" jury instructions and by failing to define "theft." Mr. O'Donnell also contends there was insufficient evidence to prove robbery. The State proved that Mr. O'Donnell took car keys from Kimberly Taylor. Thus, the alternative means of committing robbery—taking property in the presence of—was unnecessary. "Theft" has been held to be of sufficient common understanding and meaning and, thus, does not require definition. Finally, sufficient evidence supports the conviction. Accordingly, we affirm.

## FACTS

¶2 Mr. O'Donnell was charged with first degree robbery by information, based on acts that occurred on March 7, 2006.

¶3 In the spring of 2006, Kimberly Taylor and Mr. O'Donnell took a trip to Oregon together. During the course of the trip, personal property belonging to Mr. O'Donnell ended up in Ms. Taylor's car. The property consisted of Mr. O'Donnell's personal effects and clothing. Ms. Taylor maintains that she was unable to return the property to Mr. O'Donnell after returning to Spokane.

¶4 On March 7, 2006, Mr. O'Donnell encountered Ms. Taylor outside the Sage Bar in Spokane. Ms. Taylor's car was parked behind the tavern in the Liberty Tire and Auto Service parking lot. When Ms. Taylor left the tavern to walk her dog, she was approached by Mr. O'Donnell.

¶5 Ms. Taylor testified that she and Mr. O'Donnell took a brief walk with her dog, but upon returning to her car, Mr. O'Donnell grabbed Ms. Taylor by the throat, pushed her up against the car, and stated: "this is how it was gonna be." Report of Proceedings (RP) at 40. Ms. Taylor assumed that Mr. O'Donnell was upset over the property. Ms. Taylor testified that while Mr. O'Donnell had one hand around her neck, he was grabbing for her car keys with the other. The keys were hooked to her belt loop. Ms. Taylor stated that

she was scared and unable to breathe. Ms. Taylor unfastened her keys so that he would let go of her, fearing that if she did not give them to him "he'd probably kill me or rip my throat out." RP at 41. The choking left red marks and bruises on Ms. Taylor's neck. Photographs of the marks were taken by the police and were admitted into evidence.

¶6 Ms. Taylor said, "[h]e wanted the keys to my car and, pretty much, he took them from me." RP at 40. After getting the keys, Mr. O'Donnell tried to take the dog out of Ms. Taylor's arms but was unable to do so because Ms. Taylor resisted. Mr. O'Donnell then got in Ms. Taylor's vehicle and drove away.

¶7 Steven Liberty and Scott Box, employees of Liberty Tire, witnessed the incident and called the police. Mr. Liberty testified that he saw Mr. O'Donnell and Ms. Taylor yelling at each other, and saw Mr. O'Donnell holding Ms. Taylor by the neck. Mr. Liberty testified that after Mr. O'Donnell let go of Ms. Taylor, Mr. O'Donnell took the car. Mr. Liberty also testified that he saw fingerprints on Ms. Taylor's neck.

¶8 Detective Scott Anderson was assigned to investigate the incident. Detective Anderson visited two addresses listed for Mr. O'Donnell—2700 and 2600 South Assembly. Ms. Taylor's car—with stolen license plates on it—was found one block from the 2700 South Assembly apartment complex. The detective made arrangements to have the vehicle towed. Thomas Tate, the tow truck driver, testified that when he arrived to tow the vehicle, a man he identified as Mr. O'Donnell approached him. Mr. Tate testified that Mr. O'Donnell had the keys to the car and took out two or three boxes of tools.

¶9 *Procedural History.* Mr. O'Donnell was charged with first degree robbery. The information alleged that first degree robbery occurred when Mr. O'Donnell "with the intent to commit theft, did unlawfully take and retain personal property, that the defendant did not own, *from the person* and *in the presence of* KIMBERLY L. TAYLOR, against such person's will, by use or threatened use of

immediate force, violence or fear of injury to said person . . . and in the commission of and immediate flight therefrom, the defendant inflicted bodily injury upon KIMBERLY L. TAYLOR." Clerk's Papers (CP) at 1 (emphasis added).

¶10 *Jury Instructions.* The trial court instructed the jury on first degree robbery and the lesser crime of second degree robbery. Specifically, the court gave the following "to convict" instructions at issue:

## INSTRUCTION NO. 7

To convict the defendant of the crime of robbery in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 7th day of March, 2006, the defendant unlawfully took personal property from the person of another;

(2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That force or fear was used by the defendant to obtain or retain possession of the property;

(5) That in the commission of these acts the defendant inflicted bodily injury; and

(6) That any of these acts occurred in the State of Washington.

CP at 20.

## INSTRUCTION NO. 13

To convict the defendant of the crime of robbery in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 7th day of March, 2006, the defendant unlawfully took personal property from the person of another;

(2) That the defendant intended to commit theft of the property;

(3) That the taking was against that person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking; and

(5) That any of these acts occurred in the State of Washington.

CP at 26.

¶11 The defense did not object to these jury instructions. The jury made a written inquiry to the court, "requesting further clarification of the legal description of INTENT." CP at 30. The trial court's response instructed the jury to "[p]lease reread your instructions." CP at 30.

## ANALYSIS

¶12 *To Convict Instruction.* Mr. O'Donnell contends that the trial court erred by issuing defective "to convict" instructions to the jury and that these instructions were insufficient to support a conviction for first degree robbery. He argues the instructions were erroneous because they failed to include an essential element of the crime charged and because they included the additional element of "intent to commit theft."

■■ ¶13 *Standard of Review.* On appeal, challenges to jury instructions are reviewed de novo for errors of law. *Griffin v. W. RS, Inc.*, 143 Wn.2d 81, 87, 18 P.3d 558 (2001). "Jury instructions are sufficient if they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied." *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

■ ¶14 Generally, a criminal defendant may not raise an objection to a jury instruction for the first time on appeal

unless it relates to a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *see State v. Kronich*, 160 Wn.2d 893, 899, 161 P.3d 982 (2007). When a constitutional error is asserted for the first time on appeal, the reviewing court must first determine whether the "error is truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). Once the claim is found to be constitutional, the court examines the effect of the error on the defendant's trial under a harmless error standard. *Id.*

■■ ¶15 Both the United States and Washington constitutions require that the jury be instructed on all essential elements of the crime charged. *State v. Van Tuyl*, 132 Wn. App. 750, 758, 133 P.3d 955 (2006) (citing U.S. CONST. amend. VI; CONST. art. I, § 22). A jury instruction which omits an essential element of a crime relieves the State of its burden of proving each element of the crime charged beyond a reasonable doubt and is a violation of due process. *State v. Davis*, 27 Wn. App. 498, 506, 618 P.2d 1034 (1980). Therefore, the "issue of omission of an element from that instruction is of sufficient constitutional magnitude to warrant review when raised for the first time on appeal." *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005).

■ ¶16 Furthermore, where a jury instruction purports to be a complete statement of the crime, it must in fact contain every element of the crime charged. *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953). The jury is not required to supply the omitted element by searching the other instructions "to see if another element alleged in the information should have been added to those specified in [the] instruction." *Id.* In addition, a defendant is denied a fair trial if "the jury must guess at the meaning of an essential element of the crime with which the defendant is charged, or if the jury might assume that an essential element need not be proven." *Davis*, 27 Wn. App. at 506.

■ ¶17 When a "to convict" instruction fails to contain all elements essential to the conviction, such an error is harmless "only if the reviewing court is 'convinced beyond a reasonable doubt any reasonable jury would reach the same

result absent the error.' " *Van Tuyl*, 132 Wn. App. at 758 (quoting *State v. Linehan*, 147 Wn.2d 638, 654, 56 P.3d 542 (2002)).

¶18 Mr. O'Donnell assigns error to two of the trial court's jury instructions. Mr. O'Donnell contends that when the court failed to include the language "or in the presence of" in the "to convict" robbery instructions, the court omitted an essential element of the crime charged.

■ ¶19 Under Washington statute, "[a] person commits robbery when he unlawfully takes personal property *from the person of another* or *in his presence* against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." RCW 9A.56.190 (emphasis added).

¶20 Additionally, a person is guilty of robbery in the first degree if:

(a) In the commission of a robbery or of immediate flight therefrom, he or she:

(i) Is armed with a deadly weapon; or

(ii) Displays what appears to be a firearm or other deadly weapon; or

(iii) Inflicts bodily injury.

RCW 9A.56.200(1).

¶21 Washington's robbery statute clearly sets forth two ways to commit a taking of another's personal property. *See* RCW 9A.56.190. "The statute thus defines robbery to include two alternatives: taking from a victim's person or taking property in a victim's presence." *State v. Chamroeum Nam*, 136 Wn. App. 698, 705, 150 P.3d 617 (2007).

■ ■ ¶22 In the recent case, *Chamroeum Nam*, the court was faced with a similar jury instruction. *Id.* In that case, the jury instruction defined "robbery" as taking personal property from the victim's person and similarly omitted the "in the presence" language from the statute. *Id.* at 703-04. The court found that the distinction between the

terms "presence" and "person" in the robbery statute matters only when a party voluntarily elects to omit the "presence" language from the charging document or jury instructions. *Id*. at 705-06. Consequently, where either of the means to commit the crime is omitted, the State assumes the burden of proving the elements as charged or instructed. *Id*. at 706. In that case, because the "presence" language was omitted, the State was required to prove that the defendant unlawfully took personal property that was on or attached to another person. *Id*.

¶23 Mr. O'Donnell contends that the instruction here failed to identify all of the elements necessary for the jury to render a guilty verdict. But Mr. O'Donnell's argument is without merit. By omitting the "in the presence" language, the court did not omit an essential element of the crime of robbery. The court merely omitted one of the alternative means of committing the taking element. *Id*. Therefore, the trial court did not err by omitting language from the "to convict" instructions.

¶24 Next, Mr. O'Donnell contends that the "to convict" instruction included an extraneous element of "intent to commit theft." Mr. O'Donnell points out that while the State had to prove the additional "intent to commit theft" element, the instructions fail to define the term "theft." He contends that without the essential elements of theft, the instructions cannot support his conviction.

¶25 "Instructions are intended to enable jurors to apply rules of law to the facts of the case." *City of Seattle v. Richard Bockman Land Corp.*, 8 Wn. App. 214, 217, 505 P.2d 168 (1973). Instructions to the jury are sufficient to satisfy the requirement of a fair trial when, taken as whole, they are readily understood, not misleading to the ordinary mind, and properly inform the jury of the applicable law. *State v. Rehak*, 67 Wn. App. 157, 165, 834 P.2d 651 (1992). The wording of jury instructions is a matter within the trial court's discretion. *City of Yakima v. Irwin*, 70 Wn. App. 1, 10, 851 P.2d 724 (1993).

¶26 Additionally, whether the words used in an instruction require further definition is a matter of judgment to be exercised by the trial court. *Richard Bockman Land Corp.*, 8 Wn. App. at 217. In a criminal case, however, the trial court is required to define technical words and expressions, but not words and expressions which are of common understanding and self-explanatory. *State v. Humphries*, 21 Wn. App. 405, 411, 586 P.2d 130 (1978). This is referred to as the "technical term rule." *State v. Olmedo*, 112 Wn. App. 525, 534, 49 P.3d 960 (2002). The purpose of the rule is "to ensure that criminal defendants are not convicted by a jury that misunderstands the applicable law." *Scott*, 110 Wn.2d at 690.

¶27 A term is considered technical when its legal definition differs from the common understanding of the word. *Olmedo*, 112 Wn. App. at 534. Whether a term is considered technical is left to the trial court's discretion. *Id.* Significantly here, "theft" has specifically been held to be a "term of sufficient common understanding to allow the jury to convict of robbery." *State v. Ng*, 110 Wn.2d 32, 44, 750 P.2d 632 (1988).

¶28 Moreover, even if the trial court erred by failing to define "theft," Mr. O'Donnell may not challenge the jury instruction on appeal because failure to provide a definition is not an issue of constitutional magnitude. *Id.*

¶29 *Sufficiency of the Evidence.* Mr. O'Donnell argues there is insufficient evidence to support the guilty verdict under the instructions given. Whether the evidence is sufficient to sustain a verdict under the jury instructions issued by the court is determined by the law as set forth in the instructions. *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998) (quoting *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948)). Importantly, "when the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). Evidence is sufficient if

any rational trier of fact could find the elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

¶30 Mr. O'Donnell contends, under the doctrine of the law of the case, the State was required to prove he took the *vehicle* from the *person* of Ms. Taylor, which he argues no reasonable juror could conclude. He also argues that had the jury been informed of the elements of the crime of theft, they would have recognized that, even if he took the vehicle, he was guilty only of first degree theft.

¶31 However, Mr. O'Donnell confuses the issues. The State carried the burden of proving beyond a reasonable doubt that Mr. O'Donnell took personal property from Ms. Taylor and the record contains sufficient evidence to support this. Ms. Taylor testified that Mr. O'Donnell took personal property—her car keys—from her person. The testimony satisfies the State's burden where the jury instruction required the jury to find that Mr. O'Donnell unlawfully took personal property from the person of another. The fact that the keys are of little monetary value is irrelevant, as the robbery statute makes no mention of such requirement.

¶32 Further, Mr. O'Donnell's assertion that he committed only first degree theft ignores the evidence and testimony which shows that Mr. O'Donnell inflicted bodily injury on Ms. Taylor when he choked her during the struggle for her car keys. There is also sufficient evidence to prove the added element of intent to commit theft. A rational trier of fact could find that the evidence established that Mr. O'Donnell intended to commit the theft of the car keys because after Mr. O'Donnell took the keys, he immediately used them to take Ms. Taylor's car and drive away.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

¶33 In his statement of additional grounds for review, Mr. O'Donnell contends that because the prosecution failed

to disclose evidence favorable to his case, he was deprived of due process. He alleges that the State failed to disclose information to him prior to trial that he might have used to impeach the State's witness. Specifically, the impeachment evidence he refers to is a Utah conviction of the complaining witness, Ms. Taylor. During trial, Ms. Taylor testified as follows:

> [Prosecuting Attorney]: Ms. Taylor, do you have a prior conviction out of the state of Utah?
>
> A. Yes, I do.
>
> [Prosecuting Attorney]: Can you describe what that is, please.
>
> A. What the charges are?
>
> [Prosecuting Attorney]: Yes.
>
> A. It's racketeering, money laundering, pimping and pandering, and having a whore house.
>
> [Prosecuting Attorney]: How long ago was that?
>
> A. A couple years ago, maybe three.

RP at 35.

¶34 Mr. O'Donnell asserts that both CrR 4.7(a)(1)(vi) and CrR 4.7(a)(4) require the prosecuting attorney to disclose to defense counsel any record or prior criminal convictions within the knowledge, possession, or control of the prosecuting attorney of any person whom the prosecuting attorney intends to call as a witness. Mr. O'Donnell alleges that when the prosecuting attorney elected to keep this information from defense counsel until the day of trial, he engaged in misconduct and violated the rules of criminal discovery. Arguing that this kind of error cannot be harmless, Mr. O'Donnell seeks a new trial.

¶35 To prevail on a claim of prosecutorial misconduct, the defendant must show both improper conduct by the prosecutor and prejudicial effect. *State v. Munguia*, 107 Wn. App. 328, 336, 26 P.3d 1017 (2001). However, prosecutorial misconduct requires a new trial only if the misconduct was prejudicial to the defendant.

*State v. Stith*, 71 Wn. App. 14, 19, 856 P.2d 415 (1993). "Misconduct is prejudicial when, in context, there is 'a substantial likelihood' that the misconduct 'affected the jury's verdict.'" *Id.* (quoting *State v. Barrow*, 60 Wn. App. 869, 876, 809 P.2d 209 (1991)). Importantly, the defendant bears the burden of proof on both issues. *Munguia*, 107 Wn. App. at 336 (quoting *State v. Furman*, 122 Wn.2d 440, 455, 858 P.2d 1092 (1993)).

¶36 "Absent a proper objection, a defendant cannot raise the issue of prosecutorial misconduct on appeal unless the misconduct was so flagrant and ill intentioned that no curative instruction would have obviated the prejudice it engendered." *Id.* (citing *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991)). The "flagrant and ill-intentioned" standard for misconduct requires the same "strong showing of prejudice" as the test for manifest constitutional error under RAP 2.5(a). *State v. Neidigh*, 78 Wn. App. 71, 78, 895 P.2d 423 (1995).

¶37 Mr. O'Donnell relies on CrR 4.7(a)(1), which states that the prosecuting attorney shall disclose to the defendant "the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing: . . . (vi) any record or prior criminal convictions known to the prosecuting attorney of the defendant and of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial." "The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of the prosecuting attorney's staff." CrR 4.7(a)(4).

¶38 Addressing CrR 4.7, the court in *Copeland* stated:

> "It is the long settled policy in this state to construe the rules of criminal discovery liberally in order to serve the purposes underlying CrR 4.7, which are to provide adequate information for informed pleas, expedite trial, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process."

*State v. Copeland*, 89 Wn. App. 492, 497, 949 P.2d 458 (1998) (internal quotation marks omitted) (quoting *State v. Dunivin*, 65 Wn. App. 728, 733, 829 P.2d 799 (1992)).

¶39 Mr. O'Donnell fails to establish prosecutorial misconduct. There is no evidence in the record establishing when Mr. O'Donnell's counsel received the information regarding Ms. Taylor's Utah conviction. However, the record indicates that Mr. O'Donnell's counsel interviewed Ms. Taylor in August 2006. During this interview, defense counsel discussed issues related to Ms. Taylor's criminal record.

¶40 Defense counsel made no mention in the record of receiving any information on the day of trial or in any way indicated that the Utah conviction was a surprise. When meeting with the judge before jury selection, counsel for both parties discussed ER 609 material regarding the defendant, Mr. O'Donnell, and the victim, Ms. Taylor. When discussing Ms. Taylor's criminal history and the Utah conviction, defense counsel did not make any statement suggesting there may have been prosecutorial misconduct.

¶41 Even assuming the prosecutor engaged in misconduct, Mr. O'Donnell has failed to demonstrate "flagrant and ill-intentioned" misconduct or prejudice. During trial, both the prosecution and the defense counsel asked Ms. Taylor about the Utah conviction. On direct examination, the prosecution directly asked Ms. Taylor about the conviction six questions into her testimony. Under these facts, Mr. O'Donnell's claim of prosecutorial misconduct is without merit.

¶42 We affirm Mr. O'Donnell's conviction for first degree robbery.

BROWN and STEPHENS, JJ., concur.