[No. 35645-3-I.   Division One.   May 18, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL LEE BRIDGES, *Appellant*.

*Mark V. Watanabe*; and *Eric Broman* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Stephen G. Teply, Deputy*, for respondent.

PER CURIAM — Michael Bridges was properly convicted of second degree robbery because a robbery occurs when personal property is unlawfully taken by force, however slight. Bridges' grabbing the victim's wallet from his pocket

and pushing him away to retain the wallet was sufficient force to constitute a robbery. Bridges was also properly ordered to serve a sentence of life in prison under the Persistent Offenders Accountability Act (POAA). He did not make a proper showing of selective prosecution to warrant discovery or a hearing on whether the decision to charge him as a persistent offender was motivated by racial bias. We conclude that the POAA was narrowly drawn to serve a legitimate state interest, so it does not violate substantive due process. All his other constitutional challenges have been rejected by Washington's Supreme Court. Bridges' judgment and sentence is affirmed.

Bridges does not challenge the trial court's findings of fact. Therefore, the facts of the case will be recited only while analyzing the legal issues.

## POAA Challenges

In 1993, Washington voters passed Initiative 593, commonly known as the "three strikes law." The initiative amended RCW 9.94A.120 by adding a new subsection that requires trial courts to sentence "persistent offenders" to life in prison without the possibility of parole.[1] In 1994, when Bridges was convicted, a "persistent offender" was defined as one who had been convicted of a felony that was a "most serious offense" under RCW 9.94A.030(21) and had also been convicted on two other occasions of offenses falling into that category.[2] Bridges' crime of second degree robbery is a "most serious offense."[3]

Bridges asserts several constitutional challenges to the POAA. All but two of his arguments were rejected by Washington's Supreme Court in State v. Manussier,[4] State

---

[1]State v. Manussier, 129 Wn.2d 652, 659, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S. Ct. 1563, 137 L. Ed. 2d 709 (1997).

[2]Former RCW 9.94A.030(25); Manussier, 129 Wn.2d at 659.

[3]See former RCW 9.94A.030(21)(o); RCW 9.94A.030(23)(o).

[4]Manussier, 129 Wn.2d 652.

*v. Thorne,*[5] *State v. Rivers,*[6] or *State v. Davis,*[7] or were decided by this court in *State v. Angehrn.*[8] We, therefore, will address only the two arguments not already resolved and Bridges' contention that his sentence constitutes cruel punishment.

### Refusing Discovery To Prove Racial Bias Was Not Error

■ Bridges argues that the trial court erred by refusing to allow discovery or an evidentiary hearing to show that the King County prosecutor's decision to charge him as a persistent offender was motivated by racial bias. But the prosecutor has no discretion to decline to prosecute someone who satisfies the definition of a persistent offender.[9] If a person meets the definition of a persistent offender, a life sentence must be imposed.[10]

■■ Bridges also contends, however, that the decision whether to charge him with a "most serious offense" was racially motivated. To prevail on a claim of selective prosecution a criminal defendant must present clear evidence that the prosecutor violated the equal protection clause.[11] To warrant discovery on a selective prosecution claim, the defendant must produce some evidence that similarly situated defendants of other races could have been, but were not, prosecuted.[12]

The Supreme Court in *Armstrong* explained the reason the standard to order discovery on a selective prosecution claim should be rigorous:

---

[5]*Thorne*, 129 Wn.2d 736, 921 P.2d 514 (1996).

[6]*Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996).

[7]*Davis*, 133 Wn.2d 187, 943 P.2d 283 (1997).

[8]*Angehrn*, 90 Wn. App. 339, 952 P.2d 195 (1998).

[9]*Thorne*, 129 Wn.2d at 764-65.

[10]RCW 9.94A.120(4).

[11]*See United States v. Armstrong*, 517 U.S. 456, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687 (1996).

[12]*Armstrong*, 116 S. Ct. at 1488.

If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.[13]

Bridges' attorney offered anecdotal evidence that 85 percent of the defendants facing persistent offender allegations in King County were African-Americans, while only 5 percent of the population of King County is African-American. But that information did not tend to show that similarly situated defendants of other races could have been, but were not, prosecuted.[14] Nor was defense counsel's bare assertion that two Caucasian defendants were allowed to plead guilty to lesser offenses sufficient to constitute a credible showing of selective prosecution.[15] Counsel offered no details about their circumstances (he was not even sure of their names), and his claim that they could have been prosecuted as persistent offenders, but were not, was based only on hearsay from other attorneys. The trial court, therefore, did not err when it refused to allow further discovery.[16]

## POAA Does Not Violate Due Process

■ When a law impinges upon a person's liberty, which is a fundamental right, it is constitutional only if it furthers a compelling state interest and is narrowly drawn to serve

---

[13]*Id.*

[14]*Id.* at 1489.

[15]*Id.* at 1488.

[16]*See id.* at 1489 (attorneys' affidavits recounting hearsay and personal conclusions based on anecdotal evidence did not constitute sufficient showing of selective prosecution to warrant discovery).

that interest.[17] Bridges contends that the POAA violates the constitutional provisions providing that no person shall be deprived of liberty without due process of law because it is not narrowly drawn to serve a compelling state interest. He argues that the POAA is not narrowly tailored because it treats persons guilty of second degree robbery the same as someone convicted of aggravated murder.

But arguing that robbers should not be punished the same as murderers is essentially the same as saying that a sentence of life imprisonment for a robber is grossly disproportionate to the crime. The supreme court rejected that argument in *Thorne*, *Rivers*, and *Manussier* when it concluded that life imprisonment for those defendants, who were all convicted of robbery, did not constitute cruel punishment.[18]

The supreme court has not directly addressed Bridges' contention that the POAA is not narrowly drawn, but it soundly rejected other legitimate constitutional challenges to the POAA, including a contention that it violated substantive due process.[19] Moreover, the POAA was modeled after RCW 9.92.090, Washington's habitual criminals statute, which withstood a variety of constitutional challenges.[20] Under the habitual criminals statute, a person convicted of a relatively minor crime, like petit larceny, could be sentenced to life in prison if he previously had been convicted of two other felonies, or had been convicted of petit larceny on three other occasions.[21] The POAA is drafted more narrowly than the habitual criminals statute.

█ But most important, Bridges concedes that protect-

---

[17]*In re Personal Restraint of Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993).

[18]*Thorne*, 129 Wn.2d at 776; *Manussier*, 129 Wn.2d at 678-79; *Rivers*, 129 Wn.2d at 715.

[19]*See Manussier*, 129 Wn.2d at 680-81.

[20]*See State v. Jackovick*, 56 Wn.2d 915, 917, 355 P.2d 976 (1960), *overruled on other grounds*, *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983).

[21]RCW 9.92.090. Although the habitual criminals statute was found to be constitutional, our supreme court concluded that imposing life imprisonment for relatively minor, nonviolent offenses could constitute unconstitutional cruel punishment. *See State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980).

ing society from serious violent offenders is a compelling state interest. Having conceded that, he must also agree that protecting society from criminals who repeatedly commit serious violent offenses is a compelling state interest. The POAA essentially applies to those convicted of class A felonies or those class B felonies involving harm or threats of harm to persons,[22] which the Legislature has defined "most serious offenses." Bridges may disagree with the POAA's classification of certain crimes as "most serious offenses," but determining which crimes to classify as serious is an appropriate legislative function.[23] And, as the supreme court said in *Manussier*, "while the offenses included in the enumerated list of crimes in [former] RCW 9.94A.030(21) may be at least debatable, they nevertheless comprise an arguably rational, and not arbitrary, attempt to define a particular group of recidivists who pose a significant threat to the legitimate state goal of public safety."[24] We find that the POAA is narrowly tailored and does not violate substantive due process.

Bridges also argues the POAA violates due process because it eliminates judicial discretion to order sentences proportionate to the defendant's criminal history, despite its own statement of purpose that punishment should be proportional to the seriousness of the crime and the defendant's history. But the POAA represents a policy decision that no mitigating circumstances will justify departing from the penalty of life in prison for offenders who repeatedly commit the most serious crimes.[25] That policy decision does not violate due process.

---

[22]*See Thorne*, 129 Wn.2d at 748.

[23]*See id.* at 767 ("the determination of penalties for crimes [i.e., what crimes are serious] is a legislative function").

[24]*Manussier*, 129 Wn.2d at 674.

[25]*See Thorne*, 129 Wn.2d at 768.

The remainder of this opinion has no precedential value, so it will not be published.

Review denied at 136 Wn.2d 1028 (1998).