26 P.3d 1017 (2001)
STATE of Washington, Respondent,
v.
Jose Angel MUNGUIA, Appellant.
No. 17721-1-III.
Court of Appeals of Washington, Division 3.
July 19, 2001.
*1019 Kevin L. Holt, Kennewick, for Appellant.
Andrew K. Miller, Prosecuting Attorney, Kennewick, for Respondent.
*1018 BROWN, J.
Jose A. Munguia, a juvenile, was convicted as an adult in Benton County of aggravated first degree murder. On appeal, Mr. Munguia asserts trial court error in certain evidence rulings and prosecution error in alleged trial misconduct, including selective prosecution. We affirm, holding the trial court's evidence rulings were proper and no prosecutor misconduct occurred. For the first time we decide a selective prosecution claim may not be raised for the first time on appeal.

FACTS
In July 1997, Guivi G. Darbeliani died from gunshot wounds to the head. His body was found in an irrigation canal near Prosser. The next day, Ricardo Sanchez, 17, was arrested in Pasco driving Mr. Darbeliani's car. Ricardo's younger brother, Valentin Sanchez, 14, was soon taken into custody as a suspect. Both boys implicated Mr. Munguia, aged 15, who was then arrested for aggravated first *1020 degree murder. The juvenile court declined jurisdiction.
Mr. Munguia claimed self-defense stemming from an alleged sexual advance by Mr. Darbeliani toward Valentin. The prosecutor refused to plea bargain. A defense computer specialist investigated the victim's computer where web pages to homosexual Internet sites were discovered. The court, reasoning this was improper reputation evidence, granted the State's motion in limine to exclude that computer evidence.
The trial court allowed cross examination testimony contradicting Mr. Munguia's claim of unfair treatment in detention. Over a bad acts objection, Mr. Munguia admitted he was in isolation for quite some time for keeping a pod key, talking between cells, being disrespectful to the staff, and using foul language.
After the court permitted the State to examine Ricardo as a hostile witness, the State elicited testimony about Ricardo's reduced need for extra security at the penitentiary after he decided to testify for Mr. Munguia rather than against him. Defense counsel did not initially object. Later, the following exchange took place during the defense cross examination:
Q. Ricardo, what you said there at the end to Mr. Miller that you felt bad about what happened to Mr. Darbeliani is true, correct?
A. Yes.
Q. And even to this day it still bothers you?
A. Yes.
Q. But that's not because you intended to rob him?
A. No.
Q. That's because a man died?
A. Yes.
Q. Now, what you said about him being involved with having his hand around your brother; was that true?
A. Yes.
Report of Proceedings (RP) at 685-86. The prosecutor objected, arguing the questions were leading and "[c]learly he is defense counsel's witness. He is going to say whatever defense counsel says ." RP at 686. Again, defense counsel did not initially object.
After a weekend recess, Mr. Munguia unsuccessfully requested a mistrial based upon the prosecutor's questions regarding Ricardo's reduced security need and willingness "to say whatever defense counsel says." RP at 686. The court provided a curative instruction reminding the jury that attorney comments were not evidence.
Later, defense counsel asked, and the court permitted, the record to reflect that the prosecutor threw a notepad and pen in the courtroom and raised his voice. Although the prosecutor denied the substance, the trial court observed it had allowed a "certain amount of theatrics" from both sides. RP at 1443.
During closing, the prosecutor argued Valentin changed his story after obtaining counsel. Later, the prosecutor invited the jury to decide whether "any independent corroborative evidence that any of these character attacks on Guivi [were] true." RP at 2076. Defense counsel objected; the trial court instructed the prosecutor to rephrase the statement. The prosecutor continued, "[d]on't dignify a fantastic defense that isn't supported by any evidence." RP at 2078. Mr. Munguia unsuccessfully requested a mistrial, contending he was barred from bringing in evidence to support his defense; namely, the evidence from the victim's computer.
The jury found Mr. Munguia guilty as charged. This appeal followed.

ISSUES
In order, we discuss whether the trial court erred when (A) admitting evidence of Mr. Munguia's behavior while in juvenile pretrial detention in violation of the bad acts doctrine contained in ER 404(b), or (B) denying Mr. Munguia's proposed computer evidence as improper reputation evidence. Next, we examine Mr. Munguia's assignments of prosecutor misconduct in (C) engaging in trial conduct denying him a fair trial, or (D) denying equal protection by engaging in selective prosecution.

*1021 ANALYSIS

A. Alleged Bad Acts
"The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned on appeal absent a manifest abuse of discretion." State v. Bourgeois, 133 Wash.2d 389, 399, 945 P.2d 1120 (1997) (citing State v. Crenshaw, 98 Wash.2d 789, 806, 659 P.2d 488 (1983)). Mr. Munguia contends his actions while incarcerated would be analogous to prior bad acts addressed under ER 404(b).
Under ER 404(b), evidence of bad acts is inadmissible if it is offered to establish a person's character or to show he acted in conformity with that character. But, contrary to Mr. Munguia's assertion, this is not an ER 404(b) situation. In reviewing the context of the questions, the prosecutor was not focusing on Mr. Munguia's character. Rather he was attempting to rebut Mr. Munguia's allegation that he was treated unfairly while incarcerated by introducing contradicting evidence. The court directed the prosecutor to first ask, "isn't the real reason you were treated differently at least due in part of the way you acted[?]" RP at 1838. Since Mr. Munguia answered "no" to this question, the court allowed the prosecutor to impeach him. RP at 1838. See State v. Hubbard, 103 Wash.2d 570, 576, 693 P.2d 718 (1985) (impeachment by contradiction is in reality substantive rebuttal evidence). Further, in balancing the probative value of the testimony with the prejudicial effect, the court concluded the testimony was proper since Mr. Munguia denied any responsibility for his punishment while in juvenile detention. The trial court did not err.

B. Computer Files as Reputation Evidence
A ruling on a motion in limine is reviewed for abuse of discretion. State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). Mr. Munguia contends evidence regarding the sexual files in Mr. Darbeliani's computer should have been allowed because it would have corroborated Mr. Munguia's self-defense argument as evidence of reputation.
In general, character evidence is not admissible to prove a person acted in conformity therewith on a particular occasion. ER 404(a). "In particular, evidence of specific acts of conduct is inadmissible if it is offered to prove the character of the person, and that the person acted in conformity with that character." State v. Bell, 60 Wash.App. 561, 564, 805 P.2d 815 (1991); ER 404(b); ER 405(a). Evidence of a victim's past homosexual behavior "clearly falls under the general rule." Bell, 60 Wash.App. at 564, 805 P.2d 815.
Evidence of a person's reputation may "be admitted in certain circumstances to show that a victim acted in conformity with his or her character where the defendant claims that he acted in self-defense." Id.; ER 404(a)(2); ER 405(a). Evidence offered by a defendant in support of a self-defense theory must be relevant. ER 402. To be relevant, evidence must have a tendency to prove or disprove a particular fact, and the fact must be "of consequence to the determination of the action...." ER 401.
Evidence of homosexual Internet sites on Mr. Darbeliani's computer does not tend to prove that he attempted to sexually assault Valentin or attack Mr. Munguia when he claimed to have intervened. Further, no indication exists in the record of Mr. Munguia's knowledge of Mr. Darbeliani's computer sites. See State v. Hixson, 94 Wash.App. 862, 867, 973 P.2d 496 (1999) (victim's prior criminal history is irrelevant for sentencing purposes because the defendant was unaware of the victim's history at the time of the shooting). Hence, the evidence on Mr. Darbeliani's computer was irrelevant; the trial court did not abuse its discretion in excluding it.

C. Fair Trial
To prevail on a prosecutorial misconduct allegation, a defendant must show both improper conduct and prejudicial effect. State v. Pirtle, 127 Wash.2d 628, 672, 904 P.2d 245 (1995) (citing State v. Furman, 122 Wash.2d 440, 455, 858 P.2d 1092 (1993)). Prejudice is established by showing a substantial likelihood that the misconduct affected *1022 the jury's verdict. Pirtle, 127 Wash.2d at 672, 904 P.2d 245. The defendant "bears the burden of establishing both the impropriety of the prosecutor's conduct and its prejudicial effect." Furman, 122 Wash.2d at 455, 858 P.2d 1092. Absent a proper objection, a defendant cannot raise the issue of prosecutorial misconduct on appeal unless the misconduct was so flagrant and ill intentioned that no curative instruction would have obviated the prejudice it engendered. State v. Hoffman, 116 Wash.2d 51, 93, 804 P.2d 577 (1991), aff'd by McGinnis v. Blodgett, 67 F.3d 307, 1995 WL 574644 (9th Cir.1995), cert. denied, 516 U.S. 1160, 116 S.Ct. 1046, 134 L.Ed.2d 192 (1996).
First, Mr. Munguia contends the prosecutor improperly stated: "clearly he [Ricardo] is defense counsel's witness. He is going to say whatever defense counsel says." RP at 686. He unsuccessfully requested a mistrial, thus the focus is whether the trial court abused its discretion by denying the defense motion for a mistrial. A "high degree of deference" is paid to the trial court in its decision to deny a mistrial for prosecutorial misconduct. State v. Luvene, 127 Wash.2d 690, 703-04, 903 P.2d 960 (1995). A trial court "should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996) (citing State v. Johnson, 124 Wash.2d 57, 76, 873 P.2d 514 (1994)).
Here, the trial court cautiously provided a curative instruction. Jurors are presumed to follow instructions to disregard improper evidence. State v. Russell, 125 Wash.2d 24, 84, 882 P.2d 747 (1994) (citing State v. Swan, 114 Wash.2d 613, 661-62, 790 P.2d 610 (1990)). Further, Mr. Munguia has not established this lone statement substantially influenced the verdict of the jury or that the trial court abused its discretion in concluding Mr. Munguia could still receive a fair trial. Moreover, the court ruled Ricardo was a hostile witness to the prosecution on direct, thus questions by the defense on cross suggesting an answer were properly objectionable as leading in form as they suggested answers to the questions asked.
Second, regarding the allegedly thrown notepad, the trial court allowed defense counsel to make a record of the alleged incident over the prosecutor's denial. The court acknowledged it had allowed a "certain amount of theatrics" from both sides but was clearly balancing the conduct. RP at 1443. To warrant reversal, a substantial likelihood must exist that this alleged incident affected the jury's verdict. Pirtle, 127 Wash.2d at 672, 904 P.2d 245. Given this one episode occurred in the course of a lengthy trial and the trial court's effort to balance the conduct fairly, it is unlikely this incident was outcome determinative.
Third, Mr. Munguia contends the prosecutor improperly argued in closing that Valentin would not talk after obtaining counsel. Mr. Munguia did not object to this comment; thus, it must be so flagrant and ill intentioned that no curative instruction would have obviated the prejudice it engendered. Hoffman, 116 Wash.2d at 93, 804 P.2d 577.
The State responds this comment was meant to show Valentin never discussed the alleged sexual assault in the time frame before he obtained counsel. Prosecutors are given reasonable latitude to draw, and express, inferences and deductions from the evidence, including inferences as to the credibility of witnesses. State v. Knapp, 14 Wash. App. 101, 111, 540 P.2d 898 (1975). Moreover, the fact that defense counsel did not object to the prosecutor's argument "suggests that it was of little moment in the trial." State v. Rogers, 70 Wash.App. 626, 631, 855 P.2d 294 (1993).
Indeed, "[m]ost jurors know that an accused has a right to remain silent and, absent any statement to the contrary by the prosecutor, would probably derive no implication of guilt from a defendant's silence." Lewis, 130 Wash.2d at 706, 927 P.2d 235. Assuming some of the prosecutor's remarks were improper, they could have been ameliorated by a timely objection and curative instruction. State v. Wilmoth, 31 Wash.App. 820, 825, 644 P.2d 1211 (1982).
Fourth, Mr. Munguia contends the prosecutor wrongly commented during closing *1023 that the character attacks on Mr. Darbeliani were groundless and Mr. Munguia's defense was unsupported by any evidence. Mr. Munguia alleges his attorney's "hands were tied" due to the court's exclusion of the evidence on the victim's computer. Appellant's Brief at 21. Since Mr. Munguia requested a mistrial based on this incident, the issue is whether the trial court abused its discretion in denying his request.
Generally, "`[g]reater latitude is given in closing argument than in cross examination'" and counsel may "`invite the jury to make reasonable inferences from the evidence so long as counsel does not express a personal opinion.'" State v. Rivers, 96 Wash.App. 672, 674, 981 P.2d 16 (1999) (quoting State v. Stover, 67 Wash.App. 228, 232, 834 P.2d 671 (1992)). Review of the evidence in the record shows the argument was proper. The prosecutor was permitted to invite the jury to review the evidence and determine whether there was corroborating evidence to support Mr. Munguia's self-defense claim. Further, the prosecutor was permitted to comment on the lack of evidence, since it is the defendant's burden of producing evidence to support the elements of self-defense. State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997). Mr. Munguia has not overcome the "high degree of deference" paid to the trial court in its decision to deny his request for a mistrial. Luvene, 127 Wash.2d at 703-04, 903 P.2d 960.
Finally, Mr. Munguia contends the prosecutor improperly asked Ricardo, "after you gave your statement to Mr. Holt, there would be even less fear of retaliation by the defendant; is that correct?" RP at 646. Since Mr. Munguia unsuccessfully requested a mistrial based on this incident, the issue is whether the trial court abused its discretion.
We review alleged improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the court's instructions. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997). Here, the context of the questioning was to show Ricardo was frightened of Mr. Munguia. It is permissible for a prosecutor to ask a witness on cross examination if he or she is frightened of the defendant to show bias or interest. State v. Anderson, 41 Wash.App. 85, 109, 702 P.2d 481 (1985) (citing ER 607; 611(b); 5 Karl B. Tegland Wash. Prac. § 225 (2d ed.1982); State v. Roberts, 25 Wash.App. 830, 611 P.2d 1297 (1980)); rev'd, 107 Wash.2d 745, 733 P.2d 517 (1987).
Since the prosecutor's question was proper, the court had reasonable grounds to deny Mr. Munguia's request for a mistrial; there was no abuse of discretion.

D. Selective Prosecution
Preliminarily, the State contends the affidavits in the appendix of Mr. Munguia's brief are not properly before this court. A commissioner of this court returned Mr. Munguia's original brief for removal of certain materials. However, our record has since been supplemented with the three affidavits. Therefore, they are a part of this court's record on review. See RAP 9.1(a) and RAP 9.10.
Mr. Munguia contends this is a race based prosecution. We review questions of law de novo. State v. McClendon, 131 Wash.2d 853, 862, 935 P.2d 1334 (1997). Unconstitutional selective prosecution occurs when a defendant is prosecuted where similarly situated people are not; in other words, the prosecution was improperly motivated. State v. Judge, 100 Wash.2d 706, 713, 675 P.2d 219 (1984). Improper motivation for prosecution means a selection deliberately based on "`an unjustifiable standard such as race, religion, or other arbitrary classification.'" Id. (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)).
The issue of selective prosecution was not raised below. Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a). This exception to the general rule does not automatically mandate review whenever a criminal defendant identifies some constitutional issue not raised below. State v. McFarland, 127 Wash.2d 322, 333-34, 899 P.2d 1251 (1995). Appellant must show the alleged error is *1024 "manifest" by demonstrating actual prejudice. Id. at 333, 899 P.2d 1251.
Whether a claim of selective prosecution can be raised for the first time on appeal is unique in Washington. Once a defendant alleges selective prosecution, the trial court can rule on whether discovery or an evidentiary hearing is appropriate. State v. Bridges, 91 Wash.App. 102, 104, 955 P.2d 833 (1998). "`If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim.'" Id. at 106, 955 P.2d 833 (quoting United States v. Armstrong, 517 U.S. 456, 468, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996)).
Because the issue is raised for the first time on appeal, both sides have not engaged in discovery, nor has there been an evidentiary hearing; thus, our record is insufficient to determine if actual prejudice exists. Without actual prejudice, the error cannot be "manifest." The place to initiate a claim of selective prosecution is in the trial court. This conclusion is supported by other jurisdictions. See Lykus v. Commonwealth of Mass., 432 Mass. 160, 732 N.E.2d 897, 900 (2000) ("As the defendant did not raise this issue before the lower court, or the single justice, it is not properly before us on appeal"); Galvan v. State of, 988 S.W.2d 291, 295 (Tex.App.1999) ("The defendant who believes he is being subjected to selective prosecution must do something to present his case to the court").

CONCLUSION
The trial court did not err in any of the ways alleged by Mr. Munguia.
Affirmed.
WE CONCUR: KURTZ, C.J., and SCHULTHEIS, J.