IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34800-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT J. GOODSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — A jury found Robert J. Goodson guilty of second

degree assault by strangulation, and 13 counts of violation of a domestic violence no

contact order (NCO). Mr. Goodson raises numerous challenges. We remand for

correction of a scrivener's error in his sentence, but otherwise affirm.

FACTS

On May 6, 2015, around 7 a.m., Jessica Ongstead received a phone call from her

mother, Nora Goodson. Ms. Goodson was crying and very upset. She told her daughter

that she and Mr. Goodson had been in an "altercation," and that he had "choked her."

Report of Proceedings (RP) at 92. After the phone call, Ms. Goodson drove from her

home in Clarkston, Washington, to her daughter's home in Lewiston, Idaho.

When Ms. Goodson arrived, she told her daughter that she had awakened to her husband "on top of her and he choked her." RP at 92. Ms. Ongstead noticed marks on her mother's face and neck. Ms. Goodson told her daughter that she was afraid of her husband. Ms. Ongstead asked whether she should call police, and her mother said that she should.

Around 8 a.m., Officer Michael Rigney of the Lewiston Police Department arrived at Ms. Ongstead's home. Officer Rigney saw facial and neck injuries consistent with strangulation. Ms. Goodson told Officer Rigney that the incident had occurred at her home in Clarkston, and she did not feel safe there. Because the incident occurred in Washington, Officer Rigney contacted Asotin County authorities. Detective Jackie Nichols of the Asotin County Police Department arrived at Ms. Ongstead's house within 15 or 20 minutes.

Detective Nichols noticed obvious injuries consistent with manual strangulation, took pictures of Ms. Goodson to document her injuries, and later obtained a written statement from Ms. Goodson signed under oath.

Detective Nichols spoke with Ms. Goodson about the incident, during which time Ms. Goodson was "shaking, crying, [and] visibly very, very frightened." RP at 294. Ms. Goodson said that her husband "had gotten up that morning in a bad mood, [and] was

2

talking angrily about people," asked if she had heard what he had been saying, and then "attacked her." RP at 329.

Detective Nichols went to the Goodson home in Clarkston to speak with Mr. Goodson, but no one answered the door. Detective Nichols then phoned Mr. Goodson and he told her that nothing had happened. Later, Detective Nichols phoned Mr. Goodson and said she had probable cause to arrest him for second degree assault. Mr. Goodson responded, "bullshit," and it was not "second degree assault" because "there wasn't a broken bone or weapon involved." RP at 298-99. On May 7, Detective Nichols obtained an arrest warrant and arrested Mr. Goodson.

The State charged Mr. Goodson with second degree assault, committed by means of strangulation. On May 8, the court entered a one-year domestic violence NCO prohibiting Mr. Goodson from having any contact with his wife. From May 9 to May 30 Mr. Goodson called his wife 13 times from the jail. The State amended the charge to add 13 counts of violation of a domestic violence NCO. Mr. Goodson posted bond, was released, and the trial began one year later.

The State subpoenaed Ms. Goodson as a witness for the State; however, Ms. Goodson could not be located for service. The State requested and the court signed a material witness warrant to secure Ms. Goodson's presence at trial. The State also

3

discussed its desire to admit the history of domestic violence committed by Mr. Goodson against his wife if his wife testified at trial inconsistent with her written statement.

During the State's questioning of Ms. Ongstead, the State referred to the written statement that Ms. Ongstead had made to police. The State then played the lengthy series of telephone calls between Mr. and Ms. Goodson to establish violation of the NCO. On some of the calls, the Goodsons discussed Ms. Goodson recanting and telling the police that nothing happened or that she should rewrite her statement.

When Mr. Goodson cross-examined Ms. Ongstead, he asked her if her mother had written a statement. Ms. Ongstead answered that she had and also testified that she had not seen her mother write the statement. On re-direct, the State sought to introduce Ms. Goodson's written statement. Mr. Goodson objected on the basis that it had not been properly authenticated. The State responded that Mr. Goodson had opened the door to the statement's admission. The State also responded that the statement was signed under oath, had been provided in discovery, and was self-authenticating. Mr. Goodson conceded that his question to Ms. Ongstead might have opened the door, but suggested that the person who saw Ms. Goodson write it should authenticate it. The trial court agreed with the State and admitted the written statement.

The State called Detective Nichols as a witness. Detective Nichols detailed her experience as a detective, her specialized training, and her role as deputy coroner for Asotin County. Detective Nichols testified that lay people often mistakenly refer to strangulation—an external blockage of the airways—as choking, which is an internal blockage of the airways. She also testified: (1) she was aware of the long history of domestic violence between Mr. Goodson and his wife, (2) she was concerned about Ms. Goodson's well-being prior to Mr. Goodson's arrest, and her discussion with Ms. Goodson about safety planning, (3) strangulation is a felony because the legislature has found it to be very serious, that it often leads to fatalities, and that it is the ultimate form of control because the perpetrator controls the victim's breathing, and (4) Mr. Goodson sounded demeaning toward Ms. Goodson as the two discussed changing her story on the recorded calls. Mr. Goodson did not object to any of this testimony.

In the State's closing argument, it referred to Detective Nichols's testimony that strangulation is a serious offense, often deadly, and often referred to as choking. The State also told the jury that if it had any reasonable doubt, that it should find Mr. Goodson not guilty, and rhetorically added: "But tell me where that doubt comes from? Tell me what reason you have to doubt and tell me how that is reasonable." RP at 411. Mr. Goodson did not object to any of these statements.

The jury found Mr. Goodson guilty of each of the charged crimes. The court quashed the material witness warrant.

After the jury verdict, Ms. Goodman submitted an affidavit concerning her absence. According to her affidavit, Ms. Goodson arrived at the courthouse on the second day of trial. She saw her husband's attorney, and he implored her not to enter the courthouse and testify, despite the material witness warrant.

Because of this, the trial court appointed new counsel for Mr. Goodson. Mr. Goodson promptly moved for a new trial under CrR 7.5(a)(5). Mr. Goodson argued that his trial attorney's interaction with Ms. Goodson constituted a trial irregularity that prevented him from having a fair trial. The trial court heard argument and issued a memorandum opinion and order denying Mr. Goodson's motion for a new trial. The court noted the motion raised irregularity, but really was arguing that trial counsel's performance was ineffective. The court denied the motion, reasoning that trial counsel's alleged behavior raised many serious concerns, but effective representation was not one of them.

During the sentencing hearing, Ms. Goodson claimed that her husband had a work history of 15 years and was a good, hard worker. Counsel for Mr. Goodson agreed, noting Mr. Goodson had been a good, hard worker and productive member of society.

Mr. Goodson himself addressed the court and noted that he had worked and not gotten in trouble since his most recent felony, 18 years earlier. Although Mr. Goodson's standard range sentence was 63-84 months' confinement, the trial court said it would impose an exceptional sentence downward of 27 months' total confinement.

The State deferred to Mr. Goodson to prepare the judgment and sentencing and findings of fact concerning the exceptional downward sentence. Mr. Goodson prepared a proposed judgment and sentence that assessed two discretionary legal financial obligations (LFOs)—a $100 domestic violence assessment, and a $750 court-appointed attorney fee assessment. Mr. Goodson, the State, and the court signed the proposed judgment and sentence.

Mr. Goodson appealed.

## ANALYSIS

A. ADMISSION OF MS. GOODSON'S WRITTEN STATEMENT

Mr. Goodson argues the trial court erred when it determined he had opened the door to the admission of his wife's written statement. He also argues that admission of the written statement violated his right under the Sixth Amendment to the United States Constitution to confront his accuser. The State responds to these arguments in multiple

ways, including that Mr. Goodson failed to preserve these arguments for appeal. We agree.

A party generally may not raise a new argument on appeal that the party did not present to the trial court. *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). "There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal." *State v. Lazcano*, 188 Wn. App. 338, 356, 354 P.3d 233 (2015).

RAP 2.5(a)(3) is a commonly invoked exception to the general rule that only preserved errors will be reviewed on appeal. RAP 2.5(a)(3) permits an appellate court to review an unpreserved error if it is a manifest error affecting a constitutional right. Mr. Goodson does not brief reviewability at all.

"To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Manifest requires a showing of actual prejudice. *Id*. at 99. To demonstrate actual prejudice, the appellant must show the asserted error had practical and identifiable consequences at trial. *Id*.

8

Here, Mr. Goodson's first evidentiary argument, that he did not open the door so as to make his wife's written statement relevant, is not constitutionally based. We therefore decline to review it. Mr. Goodson's second argument, that admission of his wife's written statement violated his right to confront his accuser, is constitutionally based. However, Mr. Goodson does not argue how the trial court's ruling had practical and identifiable consequences at trial. We conclude that it did not.

Ms. Goodman's written statement was consistent with what she told her daughter, Officer Rigney, and Detective Nichols. All three testified at trial that Ms. Goodson told them her husband had choked her. Because Mr. Goodson has failed to show that the admission of his wife's written statement had practical and identifiable consequences at trial, we conclude that the purported constitutional error is not manifest. We therefore decline to review it.

## B.    PROSECUTORIAL MISCONDUCT

Mr. Goodson asserts prosecutorial misconduct deprived him of his right to a fair trial. He points to testimony the prosecutor elicited from witnesses and statements the prosecutor made in closing argument. Mr. Goodson did not object at trial to any of the purported misconduct that he now challenges.

To show prosecutorial misconduct, the defendant has the burden of establishing that (1) the State acted improperly, and (2) the State's improper act prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *Id.* at 760-61. The State has wide latitude in drawing and expressing reasonable inferences from the evidence. *State v. Thompson*, 169 Wn. App. 436, 496, 290 P.3d 996 (2012). Courts review allegations of prosecutorial misconduct during closing argument in light of the entire argument, the issues in the case, the evidence discussed during closing argument, and the court's instructions. *State v. Sakellis*, 164 Wn. App. 170, 185, 269 P.3d 1029 (2011).

"'Absent a proper objection, a defendant cannot raise the issue of prosecutorial misconduct on appeal unless the misconduct was so flagrant and ill intentioned that no curative instruction would have obviated the prejudice it engendered.'" *State v. O'Donnell*, 142 Wn. App. 314, 328, 174 P.3d 1205 (2007) (quoting *State v. Munguia*, 107 Wn. App. 328, 336, 26 P.3d 1017 (2001)); *see also State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

### a. *Eliciting testimony of the dangers of strangulation*

The State elicited testimony from Detective Nichols about the dangers of strangulation, the potential lethality of strangulation, and the need for victims of domestic violence to be safe. Mr. Goodson claims that eliciting this testimony constitutes misconduct. We disagree.

It is evident from the record that Mr. Goodson sought to defeat the State's charges by arguing that what he did was not a serious felony. To rebut this argument, the State sought to inform the jury that strangulation poses serious dangers to a victim. We conclude that the prosecutor did not commit misconduct by admitting evidence that was contrary to Mr. Goodson's likely defense.

### b. *Eliciting testimony that "choking" means "strangulation"*

The State elicited testimony from Detective Nichols that lay people commonly say choking when they actually mean strangulation. Detective Nichols, who had substantial training and experience responding to domestic violence, clarified that choking means an internal blockage of airflow and strangulation is an external blockage. The prosecutor did nothing wrong by eliciting testimony so the jury understood the correct technical meanings of chocking and strangulation.

>    *c.    Eliciting testimony that Mr. Goodson's recorded comments were
>    demeaning to his wife*

Mr. Goodson argues that the State committed misconduct by eliciting testimony from Detective Nichols that his recorded comments to his wife were demeaning. The opinion was relevant to establish that Mr. Goodson was capable of abusing his wife. Although the testimony was arguably objectionable, the prosecutor's eliciting of it was not flagrant or ill intentioned. Moreover, the jury heard the phone calls and could form their own opinions about Mr. Goodson's demeanor. For this reason, Detective Nichols's opinion was not prejudicial.

>    *d.    Closing argument*

In closing argument, the State re-emphasized the seriousness and lethality of strangulation. As noted previously, this was not improper.

The State also argued that Mr. Goodson literally had Ms. Goodson's life in his hands, and later rhetorically asked the jury to explain what doubt it had of Mr. Goodson's guilt. At one point the State commented, "[C]onsider how lucky we are trying a case of, ah, assault in the second degree and not one of those one in seven people having been the victim of strangulation assault in a domestic violence setting [who] end up causalities." RP at 389.

The last comment constitutes an improper emotional appeal. But we cannot conclude that there is a substantial likelihood that the improper comment, or any other arguably improper comment, affected the verdict. The evidence of Mr. Goodson's guilt was significant. First, Ms. Goodson told her daughter, a police officer, and a police detective a similar story about being "choked" by her husband. Second, her story was corroborated by physical marks on her face and neck, and also by her demeanor. Third, when confronted with the allegation that he had committed a second degree assault against his wife, Mr. Goodson did not deny that he assaulted her. Instead, he denied the seriousness of the charge by saying he had not broken any of her bones or used a weapon. For these reasons, we conclude that the prosecutor's improper comment or comments did not prejudice Mr. Goodson.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Goodson argues he received ineffective assistance of counsel for his attorney's failure to object to numerous purported errors throughout trial and for imploring Ms. Goodson not to testify. We disagree.

To meaningfully protect an accused's right to counsel an accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Courts apply a two-pronged test to determine if counsel

13

provided effective assistance: (1) whether counsel performed deficiently, and (2) whether the deficient performance prejudiced the defendant. *Id.* at 687. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). This is a mixed question of law and fact, reviewed de novo. *Strickland*, 466 U.S. at 698. A criminal appellant may bring a claim of ineffective assistance of counsel for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334-35. The burden is on the defendant to show deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court gives great deference to trial counsel's performance and begins the analysis with a strong presumption counsel performed effectively. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Counsel's decision to object to evidence is a classic example of trial tactics; only in egregious circumstances will it constitute deficient performance. *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). The reasonableness inquiry requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct. *McFarland*, 127 Wn.2d at 336.

14

### 1. Failing to object to testimony

Mr. Goodson argues that he received ineffective assistance of counsel when his attorney failed to object to Detective Nichols's testimony (1) about the lethality of strangulation, (2) that people use the term "choke" to mean "strangle," (3) referring to Ms. Goodson as a "victim," and (4) that Mr. Goodson was demeaning to his wife when talking to her from the jail telephone. As we explained above, items 1, 2, and 4 were not improper. Insofar as Detective Nichols testified that Ms. Goodson was a victim, such testimony was improper. Nevertheless, characterizing Ms. Goodson as a victim did not prejudice Mr. Goodson. He was convicted of second degree assault because of the multiple statements given by Ms. Goodson to others, the pictures showing Ms. Goodson's injuries, and the recorded jail telephone conversations.

Mr. Goodson also argues that he received ineffective assistance of counsel when his attorney failed to object to Officer Rigney's testimony about the message he saw on his computer screen that dispatched him to Ms. Ongstead's home. Officer Rigney testified the message stated there was a domestic violence situation where the victim was possibly beaten up and there was an attempted strangulation. We agree that the testimony was objectionable. However, we defer to defense counsel's reasonable decision whether to object and possibly bring attention to harmful evidence or to not object.

15

Mr. Goodson also argues he received ineffective assistance of counsel when his attorney did not raise a proper objection to the admission of Ms. Goodson's written statement. A proper confrontation clause objection would have likely been sustained. However, Mr. Goodson was not prejudiced by defense counsel's failure to object on the proper ground. Rather, the jury rendered its guilty verdicts based on substantial and compelling evidence that included Ms. Goodson's statements to multiple witnesses, the photos of her injuries, Mr. Goodson's statement to Detective Nichols that he did not break any of his wife's bones or use any weapons, and the recorded jail telephone calls.

2.       *Failing to object during the State's closing*

Mr. Goodson argues that he received ineffective assistance of counsel because his attorney failed to object during multiple improper statements made by the prosecutor during closing. As we discussed above, some of the prosecutor's statements were not objectionable, while others were. Counsel's failure to object to the more emotional arguments made by the State did not prejudice Mr. Goodson. Rather, the jury rendered its guilty verdicts based on the above-noted substantial and compelling evidence.

3.       *Imploring Ms. Goodson not to testify*

Mr. Goodson argues he received ineffective assistance of counsel because his attorney participated in a crime by imploring Ms. Goodson not to testify despite the

16

court's issuance of a material witness warrant. Mr. Goodson argues, "Defense counsel's behavior undermines trust and confidence in the justice system and brings into doubt his competence to represent a citizen such as Mr. Goodson . . . ." Appellant's Br. at 32-33.

If defense counsel actually did implore Ms. Goodson not to testify, his conduct was deplorable. Nevertheless, counsel's conduct was done to aid, not to hurt, Mr. Goodson's defense. Had Ms. Goodson testified and confirmed her written statement, this would have hurt her husband's case. Conversely, had Ms. Goodson testified and repudiated her written statement, the State likely would have admitted Mr. Goodson's history of domestic abuse against Ms. Goodson. *See State v. Magers*, 164 Wn.2d 174, 186, 189 P.3d 126 (2008) (history of domestic violence committed by defendant against victim admissible when victim recants her prior accusations). Because both scenarios were detrimental to Mr. Goodson, defense counsel's purported conduct did not prejudice Mr. Goodson and, therefore, does not constitute ineffective assistance.

D.    SCRIVENER'S ERROR

Mr. Goodson argues the jury returned its verdict on July 8, 2016, but the judgment and sentence document erroneously gives a verdict date of July 9, 2016. The State does not respond. We, therefore, remand for correction of this clerical error.

17

E. LFOS

Mr. Goodson argues the trial court erred when it ordered him to pay $850 in discretionary LFOs. He argues the trial court did not inquire into his ability to pay and that he is entitled to remand and a hearing. We decline to review this purported error.

RAP 2.5(a) provides that an "appellate court may refuse to review any claim of error which was not raised in the trial court." For this reason, a defendant who does not object to the imposition of discretionary LFOs at sentencing is not automatically entitled to review. *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). It is evident that Mr. Goodson succeeded in having the trial court impose a lenient sentence partly because he had a consistent work history since his last felony, nearly two decades earlier. We will not permit Mr. Goodson to make a contrary argument and contest his ability to find work after his release from incarceration. For this reason, we decline to review this claimed error.

F. APPELLATE COSTS

Mr. Goodson requests that this court not award the State appellate costs and has filed a report of continued indigency claiming he does not have the current or likely future ability to pay. The State has not responded. We defer Mr. Goodson's request to our court commissioner or clerk/administrator. RAP 14.2.

18

No. 34800-8-III
*State v. Goodson*

Affirmed, but remanded for correction of clerical error.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Pennell, J.

Siddoway, J.

19

No. 34800-8-III
*State v. Goodson* (Concurrence)

No. 34800-8-III

SIDDOWAY, J. (concurring) — I concur in the result but write separately on the issue of the admissibility of Detective Jackie Nichols' testimony that Robert Goodson's recorded comments to his wife were demeaning. The testimony was clearly objectionable, in my view. Because the recorded conversations had been played for the jurors, however, and the "foundation" laid for the detective's testimony would not have led the jurors to give more weight to her opinion than to their own, Mr. Goodson cannot show prejudice.

Siddoway, J.